UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATRICE K. RATTLER, ) | |
| ) | |
| Plaintiff, ) | Case No. 1: 22-cv-05579 |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| COUNTY OF COOK, SHERIFF'S OFFICE ) | |
| of COOK COUNTY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Latrice K. Rattler ("Plaintiff") brings this three-count Second Amended Complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*: Count 1 for Race Discrimination and Count II for Retaliation against Defendant Sherif's Office of Cook County and Count III for Indemnification against Defendant County of Cook. The Sheriff's Office moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons below, the motion is granted.

**Background**

 *A. Initial Matter*

Before discussing the underlying facts, the Court must first address the parties' numerous failures to comply with Local Rule 56.1. The rule requires a party seeking summary judgment to file a statement of material facts, submitted as short, numbered paragraphs containing citations to admissible evidence. L.R. 56.1(a); *see also Ace Hardware Corp. v. Landen Hardware, LLC,* 883 F.Supp.2d 739, 741 (N.D. Ill. 2012) (Manning, J.). Local Rule 56.1 also requires the opposing party to either admit or deny each paragraph and cite to its own supporting evidence. L.R. 56.1(b)(3)(A). As a

1

result, any facts that a party improperly purports to controvert in its Local Rule 56.1 response are deemed admitted. *See Hinton v. USA Funds*, No. 03 C 2311, 2005 WL 730963, at *2 (N.D. Ill. Mar. 30, 2005) (Filip, J.)

Here, Rattler's response fails to comply with Local Rule 56.1 in two ways. First, Rattler improperly presented additional facts in her response to the Sheriff's Office's Statement of Facts [57] and in a Declaration without filing her own statement of facts. "[F]acts presented only in response to a defendant's statement of facts, but not in the Rattler's own statement of additional facts are improper because the defendant has no mechanism to reply or otherwise dispute them." *See Ortega v. Chicago Pub. Sch. of the Bd. of Educ. of the City of Chicago*, No. 11 C 8477, 2015 WL 4036016, at *2 (N.D. Ill. June 30, 2015) (Durkin, J.). Because Rattler has failed to comply with Local Rule 56.1, any additional factual assertions contained within the paragraphs of her response to the Sheriff's Office's 56.1 statement will not be considered as facts "affirmatively demonstrating why summary judgment should be denied." *Id.* However, they are properly before the Court for the limited purpose of determining the basis for her denial of the Sheriff's Office's factual assertions. *Id.*

Second, Local Rule 56.1 requires a party responding to a fact statement to either admit or deny each paragraph of the statement and to cite her own supporting evidence with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(A). In the vast majority of Rattler's denials, she either provided no support for her denial, asserted facts that are not responsive to the corresponding paragraph, or denied a fact by proposing an additional fact and citing to her self-serving declaration. As a result, the Court deems the Sheriff's Office's facts as admitted. *See Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 528 (7th Cir. 2000) (no abuse of discretion in striking the nonmoving party's response in its entirety due to evasive denials and improper citations that defeated the purpose of the local rule).

Notwithstanding these admissions, the Court construes the record evidence in the light most favorable to Rattler.

### B. *Factual Background*

Defendant Cook County Sheriff's Office is a unit of local government with responsibility and authority for running the Cook County Sheriff's Police Department. The Emergency Communications/911 Center ("911 Center") is a department under the jurisdiction of the Sheriff's Police Department. Rattler is a current Sheriff's Office employee and has worked as a telecommunicator at the 911 Center since 2008.

Telecommunicators are responsible for answering emergency and non-emergency calls at the 911 Center, located at 9511 Harrison in Des Plaines, Illinois, and staff the center 24 hours a day, 7 days a week, in three shifts. At all relevant times, Martin Bennett has been the Executive Director and Megan Kinsella has been the Director of Operations of the 911 Center.

On each shift, the shift supervisor assigns one telecommunicator to perform warrant duties and enter and quash warrants for Cook County. Telecommunicators do not receive additional pay for this assignment. Rattler alleges that sometime before 2020, she was trained for two days on warrant duties and then removed from the warrant desk without explanation, and she has not since asked her supervisors that she be assigned to the warrant desk. Rattler has never applied for a promotion to supervisor in the 911 Center.

Rattler alleges that in or about May 2017, she complained to the Sheriff's Office's Human Resources department that she was being overlooked for opportunities to make additional money due to her race, and that African American employees were subjected to unfair training practices. Rattler alleges that African American employees were subjected to unfair training practices because certain African American employees did not make it through the 911 Center's training program. The employees in question were all terminated prior to 2020.

Rattler alleges that Supervisor Chris Lanuti told her that she was not considered for the acting supervisor position by Bennett because she was a member of the Black Lives Matter movement. Rattler does not recall when her alleged conversation with Lanuti occurred, but Lanuti left the employ of the Sheriff's Office in 2020 and was last in the workplace at the 911 Center in July 2018. On March 9, 2019, Mary Robinson, EEO Specialist at the Sheriff's Office, filed a complaint register with OPR, reporting Rattler's allegation. Bennett and Kinsella are typically involved in the decision as to whether a telecommunicator has the appropriate skills to work as an acting supervisor and Bennett has final decision-making authority as to whether someone should be an acting supervisor. Bennett denied the allegation and testified that getting along with coworkers and being approachable is an important quality in an acting supervisor because employees often have to ask the acting supervisor for help on their radio bands or on a phone call, and employees should be comfortable asking that individual for assistance. Rattler has been assigned training duties in the past, however those duties were removed when she engaged in verbal altercations with two trainees and the trainees threatened to quit if they had to continue training with her. Since then, no supervisor has recommended that Rattler be a trainer. Rattler alleges that when she complained to Human Resources in 2017 about race discrimination, Bennett assigned other African American employees to be acting supervisor and Bennett promoted another African American telecommunicator other than her to be supervisor.

Rattler also alleges that Bennett retaliated against her by denying her training and warrant duties, by issuing her unwarranted write-ups, by directing her not to pressure coworkers to buy insurance she sold as a second source of income and by reporting a coworker's harassment complaint against Rattler to the Office of Professional Review ("OPR"). The Collective Bargaining Agreement ("CBA") provides that telecommunicators are paid one hour of overtime for each 8-hour day that they are assigned acting supervisor or training duties. Rattler alleges that the denial of

4

acting supervisor and training assignments have detrimentally affected her "growth opportunities" at the 911 Center. The Sheriff's Office alleges that an employee's designation as acting supervisor and trainer is not considered as part of the promotional process for supervisor. The Sheriff's Office further claims that the write-ups Rattler alleges were retaliatory were not issued by Bennett. The uncontested facts are that those write ups were issued by other supervisors and were counselling notices for being late to work. While the counselling notices stated they could lead to progressive discipline, Rattler was never disciplined as a result of these write-ups.

On or about October 29, 2022, Rattler answered a call requesting an ambulance and the police department to check on someone suffering from mental health issues. While Rattler took down information from the caller, she failed to call an ambulance to respond. The recording of the call reveals that instead of promptly dispatching an ambulance, Rattler engaged in a personal phone conversation resulting in a significant delay. Rattler was issued a one-day suspension by the Discipline Unit, but subsequently contested the discipline via the grievance process. As part of the grievance process, the Sheriff's Office offered Rattler the opportunity to reduce the one-day suspension to a written reprimand. Rattler rejected the Sheriff's Office's offer to reduce the discipline and instead served the one-day suspension. Rattler alleges that she was unfairly disciplined because Telecommunicator Jennifer Bonarek (white), who was also involved in the call, received a written reprimand instead of a suspension. The Sheriff's Office claims that Rattler received a one-day suspension because as the call-taker she was required to correctly report the call and dispatch the ambulance. Bonarek received a written reprimand for not properly dispatching the police, a lesser offense because she did not have the correct information from Rattler.

Rattler testified that someone blacked out the last four letters of her name on her mailbox at the 911 Center, so that it only read "rat." Rattler does not know who defaced her mailbox, when it occurred, and never asked any of her coworkers about it. Rattler also alleges that on or about

5

October 30, 2019, she overheard a conversation between Noa-Serna, Rodriguez, Sneed and Knight in which Noa-Serna said that before she goes trick or treating, she had to get to the business of "purging," and that while Noa-Serna did not use Rattler's name, Rattler believed Noa-Serna was threatening to "purge" her because they were all looking at her.

Rattler further testified that sometime in August 2020, as she arrived at work, Noa-Serna and other coworkers were gathered around the entrance to the 911 Center, blocking her entrance. Rattler took pictures of the employees gathered around the entrance, and testified that while they did not move, she was able to walk inside with no problem, went ahead and punched in, and then notified Bennett and Human Resources about the incident.

On August 8, 2020, Bennett received an email from Noa-Serna complaining that Rattler harassed her and other coworkers by taking pictures of them without their permission near the entrance of the 911 Center, and on August 10, 2020, Bennett submitted a complaint register to OPR requesting an investigation into Noa-Serna's harassment complaint against Rattler.

On June 17, 2021, Rattler filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation, and on March 17, 2023, Rattler filed a second Charge of Discrimination with the EEOC alleging race discrimination and retaliation. Rattler filed her complaint on October 11, 2022, a first amended complaint on December 14, 2022, and a Second Amended Complaint on May 3, 2023.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that there is no genuine issue of material

fact, and if done, judgment as a matter of law should be granted in its favor. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**Discussion**

The Sheriff's Office argues that summary judgment should be granted because: (1) Rattler's claims are untimely; (2) Rattler failed to demonstrate a *prima facie* case of race discrimination; and (3) Rattler fails to establish a *prima facie* case of retaliation.[1]

*A. Untimely Claims and Retaliation*

To bring a Title VII claim, a plaintiff must file a complaint with the EEOC within 300 days of experiencing the complained-of discrimination. *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 825 (7th Cir. 2015). Otherwise, a plaintiff cannot sue for otherwise time-barred conduct. *Id.* at 826. A plaintiff who complains of discrete discriminatory acts must report each act to the EEOC in the required timeframe. *Id.* Here, Rattler files his EEOC claim on June 17, 2021, which would result in any allegations which occurred prior to August 21, 2020 being time-barred. This includes (1): the May 2017 allegations that she complained to the Sheriff's Office's Human Resources department that she was being overlooked for opportunities to make additional money due to her race, and that African American employees were subjected to unfair training practices; (2) the May 19, 2019 allegation that Supervisor Chris Lanuti told Rattler that she was not considered for the acting supervisor position by Bennett because she was a member of the Black Lives Matter movement; (3) the October 30, 2019 "purging" harassment and related allegations; (4) the 2020 retaliation

---

[1] Plaintiff's complaint alleges three counts: (1) race discrimination; (2) retaliation; and (3) indemnification against Cook County. Despite this, both parties address a claim for hostile work environment based on race. Because hostile work environment is not part of Plaintiff's second amended complaint, this Court does not consider these facts or arguments.

7

allegations involving Rattler's lack of opportunity to work as acting supervisor compared to other African American employees; and (5) the August 2021 harassment allegations are time-barred and will not be considered.

Because all of Rattler retaliation claims are untimely, summary judgment is granted in favor of the Sheriff's Office on Count II.

B. *Race Discrimination*

Rattler argues that she was discriminated against on the basis of race during October 29, 2022 as a result of the 911 call when a white co-workers received less harsh discipline despite being involved in the same incident. To establish a *prima facie* case for race discrimination under Title VII, a plaintiff must demonstrate that: (1) she is a member of a protected class, (2) her job performance met the employer's legitimate expectations, (3) she experienced an adverse employment action, and (4) a similarly situated person outside her protected class received more favorable treatment. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Once a *prima facie* case is demonstrated, the burden shifts to the employer to explain a "legitimate, nondiscriminatory reason" for its adverse employment action. *Id.* (internal citation omitted). If the employer does this, the burden shifts back to the plaintiff to present evidence showing that the employer's proffered reason is pretextual. *Id.* (internal citation omitted)

Here, Rattler cannot establish a *prima facie* case for several reasons. First, Rattler cannot show that she was meeting the Sheriff's Office's legitimate employment expectations. The record shows that on October 29, 2022, Rattler answered a call requesting an ambulance and the police department to check on someone suffering from mental health issues, and while Rattler took down information from the caller, Rattler admits that she failed to call an ambulance to respond.

The record also contains a declaration from Kinsella that stating that the recording of the call reveals that instead of promptly dispatching an ambulance, Rattler engaged in a personal phone

conversation resulting in a significant delay. Clearly, failing to dispatch an ambulance to take a personal phone call does not meet the legitimate expectations of the Sheriff's Office where Rattler is a 911 call center employee. Thus, Rattler cannot show that she met her employer's legitimate expectations.

Additionally, Rattler cannot show any similarly situated parties. Rattler's only evidence that similarly situated employees were treated more favorably is that telecommunicator Jennifer Bonarek was involved in the same call and only received a written reprimand. However, the record is clear that Rattler and Bonarek were not similarly situated because they were performing different duties. Rattler was disciplined because as the call-taker, she was required to correctly report the call and dispatch the ambulance. Bonarek was disciplined for not properly dispatching the police, a lesser offense because she did not have the correct information from Rattler. Further, Rattler rejected the Sheriff's Office's opportunity to reduce her one-day suspension to a lesser punishment in the form of a written reprimand. Thus, Rattler cannot show that any similarly situated parties. Accordingly, Rattler cannot establish a *prima facie* case of discrimination.

Even if Rattler could establish a prime facie case, the Sheriff's Office provided a legitimate, non-discriminatory reason for the one-day suspension. The Sheriff's Office reprimanded Rattler because (1) she, a 911 call center employee, failed to dispatch an ambulance because she took a personal phone call; and (2) she declined the opportunity to receive a written reprimand and instead opted for the suspension. Further, Rattler has not advanced any evidence to show that the Sheriff's Office's legitimate reasons were pretextual. Thus, Rattler's claim for race discrimination fails.

Accordingly, summary judgment is granted in favor of the Sheriff's Office on Count I, Rattler's race discrimination claim.

C. *Indemnification*

The parties' briefs fail to address Count III for indemnification, but the analysis is clear. Since there are no underlying claims that survive the instant motion, the indemnification claim cannot stand alone. Therefore, the Sheriff's Office's motion for summary judgment on the indemnification claim is granted. *Starchvill v. Dart*, No. 16 C 5713, 2018 WL 3456525, at *9 (N.D. Ill. July 18, 2018) (Durkin, J.).

**Conclusion**

Based on the foregoing analysis, the Sheriff's Office's motion for summary judgment is granted in its entirety.

**IT IS SO ORDERED.**

Date: 5/24/2024     Entered: _____
                    SHARON JOHNSON COLEMAN
                    United States District Judge